USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

COMPASS INTERNATIONAL ASSOCIATION
LTD.,

                Plaintiff,      **MEMORANDUM AND ORDER**

      - v -                    09 Civ. 6403 (NRB)

AGILITY LOGISTICS Sdn Bhd,

                Defendant.

----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    This case involves a maritime attachment order issued pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). Having previously granted and then vacated the attachment, the Court now dismisses the underlying complaint with prejudice.

## PROCEDURAL HISTORY

### I. The Complaint and Attachment Order

    On July 17, 2009, plaintiff Compass International Association Ltd. ("plaintiff" or "Compass International") filed a Verified Complaint against defendant Agility Logistics Sdn Bhd ("defendant" or "Agility Logistics") requesting, inter alia, an ex parte order for Process of Maritime Attachment and

Garnishment pursuant to Rule B (the "Attachment Order"). The request for the Attachment Order was predicated on Compass International's allegation that Agility Logistics owed $344,418 on an unpaid "deadfreight invoice" for the transport of cargo. (Complaint ¶¶ 4-10.)

Plaintiff further alleged that under the terms of the underlying contract, any disputes between the parties were to be referred to arbitration in London. (Id. ¶ 11.) Plaintiff claimed that it would "commence arbitration proceedings in London shortly." (Id.)

The Court issued the Attachment Order on July 20, 2009. The order specified that it would automatically expire 45 days after the date of issuance -- i.e., on September 3, 2009 -- "unless plaintiff confirms by letter that it has commenced arbitration or other adversarial proceedings on the merits of the claims underlying the attachment." (Attachment Order at 5.) Plaintiff could request a 45-day extension, however, if it could show "good cause" for the failure to timely commence arbitration or other adversarial proceedings. (Id.)

Defendant filed a Limited Appearance, Answer and Defenses on September 2, 2009.

## II. Defendant's Request for an Extension of the Attachment Order

On September 3, 2009, plaintiff's counsel wrote the Court to request a 45-day extension of the Attachment Order, arguing that Compass International had "good cause" for the failure to commence arbitration or other adversarial proceedings against Agility Logistics. Specifically, plaintiff's counsel wrote:

> [T]he parties have engaged in settlement discussions and Plaintiff is optimistic of a positive outcome. The settlement talks are presently suspended but will resume as soon as Defendant's Executive Director returns from holiday. In view of the pending settlement, Plaintiff believes it would not be conducive to the parties' negotiations if it commences arbitration at this time. In the circumstances, we respectfully request that the Court grant Plaintiff an additional 45 days to commence arbitration proceedings in this matter.

(Plaintiff's Letter to the Court, dated September 3, 2009, at 1.) The letter also stated that Compass International had by then "restrained about $200,000 of Defendant's assets." (Id.)

On September 8, 2009, relying on the representations of plaintiff's counsel, the Court granted Compass International's application for an extension of the Attachment Order.

## III. Vacatur of the Order

On September 9, 2009, the Court received a letter from defendant responding to plaintiff's letter of September 3rd and opposing plaintiff's application for an extension. The letter, which was written on September 8th (before defendant became

3

apprised of the Court's order that day), stated that plaintiff's counsel's statements concerning ongoing "settlement discussions" were "not accurate." (Defendant's Letter to the Court, dated September 8, 2009, at 2.) Specifically, defendant claimed:

> [W]ith the exception one [sic] meeting that Agility Logistics held with plaintiff's booking agent nearly 18 months ago, plaintiff and Agility Logistics have not engaged in any settlement discussions or negotiations concerning this matter, and the first time that Agility Logistics received any communication on behalf of plaintiff since that time concerning the possibility of holding settlement discussions was September 3 -- the date on which the attachment expired.

(Id. (emphasis in original)) To support these claims, defendant attached a declaration from the Chief Financial Officer of Agility Logistics, as well as a copy of the e-mail sent by plaintiff's booking agent to defendant on the afternoon of September 3rd. The e-mail corroborated defendant's account.

On the evening of September 9th, the Court held a teleconference with counsel for both parties. The Court expressed its concern over the discrepancy between the representations made by plaintiff's counsel in his letter of September 3rd (which claimed that the parties were engaged in ongoing "settlement discussions") and the facts presented in defendant's letter of September 8th (which explained that there were no such discussions).

4

Plaintiff's counsel did not dispute defendant's account. Rather, he argued that in writing his letter, he had merely relied on the representations of another attorney, located overseas, who also worked for his client.

The Court noted that plaintiff's counsel had, inadvertently or not, misled the Court, since the premise for granting plaintiff's application for an extension of the Attachment Order -- that there were ongoing settlement negotiations -- had turned out to be false. The Court ruled that under the circumstances, plaintiff had failed to demonstrate the requisite "good cause" for an extension.

Plaintiff's counsel suggested that the situation could be remedied if Compass International instituted arbitration against Agility Logistics. The Court ruled that plaintiff remained free to do so, but because the Attachment Order had expired, the company would have to proceed without the security (and bargaining leverage) of a Rule B attachment.

The next day, the Court entered a brief order vacating the attachment (the "Vacatur Order"). That order, however, did not explicitly state whether the underlying Complaint was dismissed.

**IV. The Parties' Proposed Orders for Dismissal**

On September 16, 2009, the parties submitted competing proposed orders for dismissal of the underlying Complaint. Their dispute concerned the prejudicial effect of the dismissal.

5

Plaintiff's proposed order would have provided for the dismissal of the Complaint without prejudice. Plaintiff pointed to language in the Attachment Order as purported support for this position and further argued that the Vacatur Order "did not contain any provision that the vacatur of the attachment be on a <u>with prejudice</u> basis." (Plaintiff's Letter to the Court, dated September 16, 2009, at 1 (emphasis in original).)

Defendant's proposed order would have provided for a dismissal of plaintiff's Complaint with prejudice, but with one exception: the matter could "be re-opened upon Plaintiff's motion, on notice to Defendant's counsel, only for the purposes of any necessary proceedings to enforce a judgment or arbitral award that may be rendered in connection with a resolution of the merits of the dispute upon which the Attachment Order was originally issued." (Defendant's Proposed Order Dismissing Supplemental Rule B Maritime Attachment Proceeding at 2.) Defendant argued that this was consistent with the Court's ruling on the parties' September 9th teleconference and that, if plaintiff's proposed order were adopted, "virtually no consequences would follow from last week's events." (Defendant's Letter to the Court, dated September 16, 2009, at 1.)

## DISCUSSION

At the outset, the Court notes that the Vacatur Order inadvertently omitted language that would have dismissed plaintiff's Complaint. Had the Court included language stating simply that plaintiff's Complaint had been "dismissed" without further qualification, that involuntary dismissal would have been with prejudice by operation of law. See Fed. R. Civ. P. 41(b) (unless an order of involuntary dismissal states otherwise, such a dismissal "operates as an adjudication on the merits"). The Court is empowered to order such an involuntary dismissal sua sponte where, as here, a plaintiff fails to comply with a court order. See, e.g., Leybinsky v. Iannacone, No. 97-CV-52138(JG), 2000 WL 863957, at *3 (E.D.N.Y. June 21, 2000).

Nevertheless, now that the issue is squarely before us, the Court expressly concludes that the appropriate dismissal in this case should be on the merits and with prejudice. Any other result would invite plaintiffs to violate the Court's attachment orders with virtual impunity. The failure of plaintiffs to timely commence proceedings to resolve the dispute on the merits is not without consequence to defendants whose funds have been attached.

The circumstances surrounding plaintiff's violation of the Court's Attachment Order are also highly relevant. Our Vacatur Order deliberately refrained from discussing the misleading

7

representations that were made to the Court by plaintiff's counsel on September 3rd and did not emphasize the casual treatment by plaintiff of the Court's Attachment Order. These points, however, could easily have been incorporated. Intentionally or not, plaintiff's counsel misled the Court into granting Compass International's application for an extension of the Attachment Order, which would have expired on September 3rd absent plaintiff's misrepresentations concerning what turned out to be nonexistent "settlement negotiations." The Court does not take such misrepresentations lightly. The integrity of our

adversarial system of justice relies upon the diligence, honesty, and good faith of the parties' attorneys.[1]

Finally, although plaintiff has seized upon language in the Court's Attachment Order suggesting that a dismissal could be without prejudice, plaintiff has taken that language out of context. The Attachment Order specified that if plaintiff failed to show "good cause" for why it had not commenced arbitration or other adversarial proceedings within 45 days, the action would be dismissed "without prejudice." (Attachment Order at 5.) That language, however, was written in contemplation of a very different scenario, namely one where

---

[1] Indeed, plaintiff's liberal approach to the facts appears to have continued beyond its letter of September 3rd.

On September 17, 2009, plaintiff wrote to the Court stating that it had "today commenced arbitration proceedings against Agility Logistics." (Plaintiff's Letter to the Court, dated September 17, 2009, at 1.) Coming one week after the Court's Vacatur Order, and just a day after the parties' competing orders for dismissal, the letter was an apparent attempt to buttress plaintiff's argument for a dismissal without prejudice. To support the contention that arbitration proceedings had begun, plaintiff attached an e-mail written to defendant by another of plaintiff's attorneys, this one based in London, stating that he was "under instructions to commence arbitration proceedings." (Id. at 2.) (Curiously, plaintiff's letter did not explain what had happened to the supposed "settlement discussions" about which Compass International was "optimistic" just two weeks earlier. If it is possible for nonexistent negotiations to break down, it seems that has happened here.)

As defendant points out, it is not at all clear that the e-mail from plaintiff's London attorney constitutes the proper commencement of arbitration. (See Defendant's Letter to the Court, dated September 18, 2009.) It appears to be the equivalent of an American attorney telling a potential adversary that he intends to file a lawsuit. Intentions, however, are not the equivalent of actions.

plaintiff had failed to commence arbitration within the allotted timeframe <u>and</u> there had been no funds attached. In other words, the Attachment Order contemplated a "no harm, no foul" situation, one in which defendant did not suffer the burdens of an attachment. That is not the case here.[2]

Under the circumstances, defendant's position on the dismissal of plaintiff's Complaint is eminently reasonable. The Court finds that a dismissal with prejudice is appropriate given plaintiff's misleading representations to the Court and its casual treatment of the Court's Attachment Order.

## CONCLUSION

For the foregoing reasons, the Court dismisses the Complaint with prejudice. The case may be re-opened upon Plaintiff's motion, on notice to Defendant's counsel, only for the purposes of enforcing a judgment or arbitral award that may be rendered in connection with a resolution of the merits of the dispute underlying the Complaint and the Attachment Order.

The Clerk of the Court is respectfully directed to close this case.

---

[2] The Court might (and, indeed, did) grant an extension under the "good cause" provision in order to facilitate a settlement between the parties. But the Court refuses to permit that provision to be abused in the way plaintiff proposes here. A Rule B attachment is an extraordinary remedy; it is not a process that should be commenced, discontinued, and then commenced again at will.

10

Dated:     New York, New York
           September 24, 2009

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

A copy of the foregoing Order has been mailed on this date to the following:

**Plaintiff**
Rahul Wanchoo, Esq.
350 Fifth Avenue, 59th Floor
New York, NY 10118

**Counsel for Defendant**
Gary A. Stahl, Esq.
Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022

11